IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-02303-PAB-KLM

DANIEL ONODERA,

       Plaintiff,

v.

BEVERLY DOWIS, Health Services Admin,
KATHLEEN MELLOH, Physician Assistant,
JOANN STOCK, Physician Assistant,
STEPHAN KREBS, P.H.P. M.D.,
PAULA FRANTZ, Chief Medical Officer,
JOSEPH FORTUNATO, M.D., and
NICOLE WILSON, Medical Records Admin.,

       Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

       This matter is before the Court on Defendants' **Motion to Dismiss** [Docket No. 70; Filed May 9, 2011] (the "Motion").  Plaintiff, who is proceeding *pro se*, filed a Response [Docket No. 76] in opposition to the Motion on May 23, 2011.  Defendants have not filed a Reply.[1]  Pursuant to 28 U.S.C. § 636 (b)(1)(A) and D.C.COLO.LCivR 72.1C, the Motion has been referred to this Court for a recommendation regarding disposition.  The Court has reviewed the pleadings, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court **RECOMMENDS** that the Motion be **GRANTED in part** and **DENIED in part**.

------

      [1] The Court is not required to wait for Defendants to reply before it issues a recommendation regarding disposition of the Motion.  D.C.COLO.LCivR 7.1C ("Nothing in this rule precludes a judicial officer from ruling on a motion at any time after it is filed.").

## I.  Summary of the Case

Plaintiff was an inmate at the Colorado Department of Corrections ("CDOC") Sterling

Correctional Facility ("Sterling") at all times relevant to this case.  On April 25, 2011, he filed

an Amended Complaint [Docket No. 66] in which he claims that Defendants violated the

rights guaranteed to him by the Eighth Amendment to the United States Constitution by

failing to provide him with "proper and adequate medical care and treatment" for injuries

to his knee and Achilles tendon.  *Amended Complaint* [#66] at 4.  Plaintiff alleges that

Defendants denied and delayed the provision of medical treatment since February 17,

2010.  *Id.*; *see also id.* at 5 ("The Defendants' delay and denial of adequate and proper

medical care and treatment for 11 months has been callous, reckless, and deliberately

indifferent to Plaintiff's sufficiently serious medical needs.").

Defendants contend that Plaintiff's claims against them should be dismissed

pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for the following reasons: (1) Plaintiff's

claims for monetary damages against Defendants in their official capacities are barred by

the doctrine of sovereign immunity; (2) Plaintiff has failed to state a claim under the Eighth

Amendment as a matter of law; and (3) Defendants are entitled to qualified immunity from

liability in their individual capacities.  *Motion* [#70] at 3-11.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the

Court has jurisdiction to properly hear the case before it.  Because "federal courts are

courts of limited jurisdiction," the Court must have a statutory basis to exercise its

jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P.

12(b)(1).  Statutes conferring subject-matter jurisdiction on federal courts are to be strictly

construed. *F & S Const. Co. V. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.* By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. With a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends. *Id.* The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987)). The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule12(b)(1) into a motion for summary judgment pursuant to Rule 56. *Id.*

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed R. Civ. P. 12(b)(6) (A complaint may be dismissed for "failure to state a claim upon which relief can be granted."). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its

-3-

face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

When considering Plaintiff's Amended Complaint [#66] and Response [#76], the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir.

-4-

1994).

## III.  Analysis

### A.    Plaintiff's Claims for Monetary Damages Against Defendants in Their Official Capacities

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendants contend that the doctrine of sovereign immunity bars the Court from exercising subject-matter jurisdiction over Plaintiff's claims for monetary damages against them in their official capacities. *Motion* [#70] at 3-4; *see Amended Complaint* [#66] at 2-3 (alleging that each Defendant was "acting under color of state law" at the time of the alleged conduct giving rise to Plaintiff's claims). The Court agrees.

"Suits against state officials in their official capacity should be treated as suits against the state." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see also Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) (stating that state officers sued in their official capacity are not "persons" subject to suit under 42 U.S.C. § 1983.).  The doctrine of sovereign immunity bars "a citizen from suing his own State under the federal-question head of [subject-matter] jurisdiction."  *Alden v. Maine*, 527 U.S. 706, 727 (1999) (citing *Hans v. Louisiana*, 134 U.S. 1, 14-15 (1890)); *see generally id.* at 728 (noting that "sovereign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself" (citations omitted)). The doctrine applies whether the relief sought is legal or equitable, *Papasan v. Allain*, 478 U.S. 265, 276 (1986), and it "confers total immunity from suit, not merely a defense to liability," *Ambus v. Granit Bd. of Educ.*, 995 F.2d 992, 994 (10th Cir. 1993).  Accordingly, the Court lacks subject-matter jurisdiction to adjudicate an action brought by a citizen of

-5-

Colorado against the state of Colorado, its agencies, or its officials in their official capacity. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995). However, the doctrine of sovereign immunity does not bar "a suit brought in federal court seeking to prospectively enjoin a state official from violating federal law." *Id.* (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1980)).

In this case, Plaintiff has invoked the Court's subject-matter jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1983 and requested relief in the form of monetary damages and a permanent injunction. *Amended Complaint* [#66] at 4 & 15. The doctrine of sovereign immunity applies to 42 U.S.C. § 1983 actions. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). Thus, to the extent that Plaintiff requests monetary damages from Defendants in their official capacities, his claims are barred. Accordingly, the Court recommends that Plaintiff's claims against Defendants in their official capacities seeking monetary damages be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(1). *Garman v. Campbell County Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010) ("Generally, a dismissal for lack of subject matter jurisdiction is without prejudice and does not have a preclusive effect."); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("[W]here the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice.").

### B.  Plaintiff's Claims for Injunctive Relief Against Defendants in Their Official Capacities

On June 2, 2011, Plaintiff notified the Court that he is no longer an inmate at Sterling. *Motion for the Court to be Custodian of Legal Documents* [Docket No. 80].

Plaintiff is now in the custody of the Denver County Jail.  *Id.*  Because all Defendants are or were employed by CDOC, Plaintiff's claims seeking prospective injunctive relief against them in their official capacities are now moot.  "Striking at the very heart of federal subject matter jurisdiction, a mootness issue quite clearly can be raised *sua sponte* if not addressed by the parties."  *Sannon v. United States*, 631 F.2d 1247, 1250 (5th Cir. 1980); *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) ("We have no subject-matter jurisdiction if a case is moot.").  Accordingly, the Court recommends that Plaintiff's claims seeking injunctive relief against Defendants in their official capacities be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(1).  *See Garman*, 630 F.3d at 985.

### C.    Plaintiff's Claims for Monetary Damages Against Defendants in Their Individual Capacities

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants contend that Plaintiff has failed to state a violation of the Eighth Amendment.  Accordingly, Defendants argue that Plaintiff's claims for monetary damages against them in their individual capacities should be dismissed.

The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted.  U.S. Const. amend. VIII.  Punishments which "involve the unnecessary and wanton infliction of pain" violate this provision.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  Because "[a]n inmate must rely on prison authorities to treat his medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment," *id.* at 104

(quoting *Gregg*, 428 U.S. at 173).  To prove a claim of deliberate indifference, a prisoner must establish that (1) he was deprived of a medical need that is, objectively, "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and (2) the defendant knew of and disregarded "an excessive risk to [the prisoner's] health or safety," *id.* at 837.  "A medical need is sufficiently serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.C.N.H. 1977)).  A defendant knew of and disregarded an excessive risk to a prisoner's health or safety when he was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *and* he actually drew that inference.  *Farmer*, 511 U.S. at 837.

Importantly, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Thus, "a complaint that a [medical care provider] has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."  *Estelle*, 429 U.S. at 106; *see also Ramos,* 639 F.2d at 575 ("[A] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.").  Further, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.").  Finally, a prisoner

does not have a valid claim of deliberate indifference simply because he was denied "a particular course of treatment" that he desired. *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006). "[A] prison doctor remains free to exercise his or her independent professional judgment," *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997), and "[m]edical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview," *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (quoting *Estelle*, 429 U.S. at 107).

In this case, Defendants decline to address whether Plaintiff's alleged knee and Achilles tendon injuries objectively constitute a sufficiently serious medical need. *Motion* [#70] at 5. Instead, Defendants contend that even if Plaintiff had a serious medical need, the Amended Complaint does not allege that they ever disregarded this need. *Id.* ("Assuming *arguendo* that Plaintiff sufficiently alleged that he was, objectively, deprived of a 'sufficiently serious' medical need, his Eighth Amendment claim would still fail because he cannot prove that, subjectively, Defendants knew of and disregarded an excessive risk to his health or safety."). In short, Defendants argue that Plaintiff has failed to allege that they intentionally refused to provide him with medical care "'with a sufficiently culpable state of mind.'" *Id.* (quoting *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1022 (10th Cir. 1996)). They assert that, at most, Plaintiff has alleged that they were negligent in diagnosing and prescribing treatment for his injuries. *See id.* ("An official's failure to perceive or detect a risk does not constitute cruel and unusual punishment." (citing *Farmer*, 511 U.S. at 841)). The Court considers the sufficiency of Plaintiff's allegations against each Defendant in turn.

### (1)    Defendant Dowis

Plaintiff alleges that Defendant Dowis was the Health Service Administrator at Sterling "at all times relevant to" his claims.  *Amended Complaint* [#66] at 2.  Plaintiff asserts two distinct claims against Dowis.   First, he claims that she is liable "in her supervisory role" for conduct of the medical staff at Sterling that allegedly violated the Eighth Amendment.  *Id.* at 7.  In support of this claim, Plaintiff alleges that Dowis "failed to train or provide training for [Sterling] medical staff."  *Id.*  Second, Plaintiff claims that Dowis personally exhibited deliberate indifference to his medical need when she "conducted a 'medical staffing' to address [his] condition" on January 6, 2011.  *Id.*  Plaintiff alleges that Dowis "order[ed] the delay of any treatment" for his knee and Achilles tendon injuries at this medical staffing meeting.  *Id.* at 11.

### (a)    Plaintiff's Failure to Train Claim

The Court finds that Plaintiff's first claim against Dowis "in her supervisory role" should be dismissed.  "Individual liability under [42 U.S.C.] § 1983 must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)).  A defendant is personally involved in an alleged constitutional violation only if there is an "affirmative link" between her conduct and the alleged violation.  *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).  Because of the "affirmative link" requirement, a defendant in a position of general supervisory authority cannot be held vicariously liable for alleged constitutional violations committed by her subordinates.  *Mitchell v. Maynard*, 80 F.3d 1433,

1441 (10th Cir. 1996) ("[S]upervisor status by itself is insufficient to support liability." (citing *Rizzo v. Goode*, 423 U.S. 362, 376 (1976))); *Ruark v. Solano*, 928 F.2d 947, 950 (10th Cir. 1991) ("'[T]here is no concept of strict supervisor liability under section 1983.'" (quoting *Harris v. Greer*, 750 F.2d 617, 618 (7th Cir. 1984))); *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983) ("A defendant cannot be liable under a *respondeat superior* theory in a section 1983 case." (citing *McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1979))); *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights.").

Courts have explained that a defendant in a supervisory position is personally involved in an alleged constitutional violation by her subordinates in two situations. First, a supervisor is personally involved when she personally directs her subordinates to take the action resulting in the alleged constitutional violation. *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992). Second, a supervisor is personally involved when she has actual knowledge that her subordinates are committing the alleged constitutional violation and she acquiesces in its commission. *Id.* (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (stating that supervisor liability requires "allegations of personal direction or of actual knowledge and acquiescence")); *see also id.* at 1399 n.11 (To show an affirmative link between the defendant supervisor's conduct and unconstitutional behavior by her subordinates, a plaintiff must establish "an intentional, conscious, and deliberate act by the defendant participating in, or knowingly acquiescing in, the unconstitutional behavior."). The Court of Appeals for the Tenth Circuit has explained personal involvement by knowing acquiescence as follows: "In this context, the

supervisor's state of mind is a critical bridge between the conduct of a subordinate and [her] own behavior."  *Serna*, 455 F.3d at 1151.

The Supreme Court has recently called into question the notion of personal involvement by knowing acquiescence.  In *Ashcroft v. Iqbal*, the Court suggested that the simple fact that a supervisor knew of and acquiesced in a constitutional violation committed by his subordinates does not establish that he was personally involved in the violation. 129 S. Ct. at 1949.   In *Iqbal*, the Court considered a federal detainee's claim that his designation as "a person of high interest" was the result of unconstitutional discrimination on the basis of his race, religion, or national origin.  *Id.* at 1944.  The detainee asserted his discrimination claim against, *inter alios*, the Attorney General of the United States and the Director of the Federal Bureau of Investigation (FBI).   *Id.*   He argued that these senior officials established the policy and procedures implemented by the prison officials who actually made the allegedly discriminatory designation.  *Id.* ("The pleading names [former Attorney General] Ashcroft as the 'principal architect' of the policy, and identifies [Director of the FBI] Mueller as 'instrumental in its adoption, promulgation, and implementation.'" (citations omitted)).  The Supreme Court held as follows:

> [Respondent] argues that, under a theory of "supervisory liability," petitioners can be liable for "knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees." That is to say, respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution.  We reject this argument.  Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents.  In a § 1983 suit or a *Bivens* action – where masters do not answer for the torts of their servants – the term "supervisory liability" is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.  In the context of determining whether there is a violation of clearly established right to overcome qualified

> immunity, purpose rather than knowledge is required to impose *Bivens*
> liability on the subordinate for unconstitutional discrimination; the same holds
> true for an official charged with violations arising from his or her
> superintendent responsibilities.

*Id.* at 1949.

*Iqbal* has been interpreted by at least two Courts of Appeals as narrowing the scope

of what constitutes "personal involvement" by a supervisor in an alleged constitutional

violation committed by his subordinates:

> [G]iven a recent Supreme Court pronouncement, the basic concept of § 1983
> . . . supervisory liability itself may no longer be tenable. *See Iqbal*, 129 S. Ct.
> at 1949 ("In a § 1983 suit or a *Bivens* action–where masters do not answer
> for the torts of their servants–the term 'supervisory liability' is a misnomer.").
> After *Iqbal*, circuits that had held supervisors liable when they knew of and
> acquiesced in the unconstitutional conduct of subordinates have expressed
> some doubt over the continuing validity of even that limited form of liability.
> *See Bayer v. Monroe County Children & Youth Servs.*, 577 F.3d 186, 190 n.5
> (3d Cir. 2009); *Maldonado v. Fontanes*, 568 F.3d 263, 274 n.7 (1st Cir.
> 2009).

*Arocho v. Nafziger*, 367 F. App'x 942, 947 n.4 (10th Cir. 2010).  Accordingly, to establish

that a defendant in a supervisory position is personally involved in an alleged constitutional

violation by her subordinates, a plaintiff must show that the defendant did more than simply

acquiesce in the violation.[2]

In this case, Plaintiff's allegation that Dowis failed to train subordinates who did not

provide him with appropriate medical treatment is insufficient to state a claim.  Plaintiff's

---

[2] The Courts of Appeals have not provided clear guidance regarding precisely what a plaintiff must show to demonstrate more than mere acquiescence by the defendant.  But *Iqbal* and *Serna* indicate that the defendant's state of mind is the linchpin of the analysis.  In *Iqbal*, the Supreme Court suggested that a defendant who acquiesces in a constitutional violation by her subordinates is personally involved in the violation only if her acquiescence is motivated by a "purpose" to allow or further the violation.  *See* 129 S. Ct. at 1949.  In *Serna*, the Court of Appeals for the Tenth Circuit suggested that a defendant supervisor who acquiesces in a constitutional violation is personally involved in that violation only if she shares the same "state of mind" with her subordinates who actually commit the violation.  *See* 455 F.3d at 1151.

failure to allege an affirmative link between Dowis's direct actions and the conduct of her subordinates is a fatal omission. Without this link, the Amended Complaint does not allege any purpose by Dowis to violate Plaintiff's constitutional rights by failing to train her subordinates. The Court therefore recommends that Plaintiff's first claim against Dowis should be dismissed with prejudice.[3]

> **(b)    Plaintiff's Delay in Treatment Claim**

Plaintiff claims that Dowis personally "order[ed] the delay of any treatment" for his

---

[3] The dismissal of an action "pursuant to Rule 12(b)(6) is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992); *accord Brierly v. Schoenfeld*, 781 F.2d 838 (10th Cir. 1986) (affirming a district court decision to dismiss with prejudice an action brought under 42 U.S.C. § 1983); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (stating that "where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice"); *Tepper v. Van Dam*, 974 F.2d 1345, 1992 WL 219037, at *3-4 (10th Cir. Sept. 9, 1992) (unpublished table decision) (relying on *Okusami*, *Brierly*, and *Cortec* to affirm dismissal of an action with prejudice). However, due to heightened concerns when the plaintiff is proceeding *pro se*, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *see also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997)). Even as courts are careful to protect the rights of *pro se* plaintiffs, they typically find that granting the opportunity to amend would be futile. *See, e.g., Arocho*, 367 F. App'x at 955 (describing a set of circumstances under which giving a plaintiff an opportunity to amend his complaint would not be futile as "unique"); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should attach to a dismissal unless the plaintiff has made allegations "which, upon further investigation and development, could raise *substantial* issues" (emphasis added)); *but see Gee v. Pacheco*, __ F.3d __, 2010 WL 4909644, at *5 (10th Cir. Oct. 26, 2010) ("[O]rdinarily the dismissal of a *pro se* claim under Rule 12(b)(6) should be without prejudice, and a careful judge will explain the pleading's deficiencies so that a prisoner with a meritorious claim can then submit an adequate complaint." (citations omitted)).

In his Response [#76], Plaintiff made no effort to establish an affirmative link between Dowis's direct actions and the conduct of her subordinates. Based on Plaintiff's failure to address Dowis's personal participation in the Response, the Court infers that he simply does not have anything to add to his failure to train allegations. Accordingly, the Court concludes that granting Plaintiff leave to amend would be futile and dismissal with prejudice is appropriate.

knee and Achilles tendon injuries on January 6, 2011.  *Amended Complaint* [#66] at 11;

*Response* [#76] at 5 (stating that Dowis "conducted a medical staffing on 1/6/11 to address

Plaintiff's condition and denied/delayed treatment").  "'Delay in medical care can only

constitute an Eighth Amendment violation if there has been deliberate indifference which

results in substantial harm.'"  *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (quoting

*Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)).  The Court of Appeals for the

Tenth Circuit has "held that the substantial harm requirement may be satisfied by lifelong

handicap, permanent loss, or considerable pain."  *Garrett v. Stratman*, 254 F.3d 946, 950

(10th Cir. 2001) (citations omitted).  "[A] prison medical professional who serves 'solely .

. . as a gatekeeper for other medical personnel capable of treating [an inmate's] condition'

may violate [the] inmate's Eighth Amendment rights if he 'delays or refuse[s] to fulfill that

gatekeeper role.'"  *Id.* at n.4 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir.

2000)).

Defendants contend that Plaintiff has not alleged that he suffered "substantial harm"

from the purported delay in the provision of medical treatment.  *Motion* [#70] at 9 ("[T]here

are no facts to indicate that Defendants' alleged delay caused any harm to Plaintiff, let

alone substantial harm.").  The Court disagrees.  Plaintiff alleges that the delay ordered by

Dowis caused him to suffer "extreme pain and irreparable harm to [his] Achilles tendon."

*Amended Complaint* [#66] at 7.   While it is true that Plaintiff does not specify the

"irreparable harm" to his Achilles tendon, this pleading deficiency can easily be remedied

with amendment or through discovery.  It is inefficient to dismiss a *pro se* plaintiff's claim

based on a minor pleading deficiency when it is clear that the deficiency is easily

correctable.  *See supra* n.3; *Oxendine*, 241 F.3d at 1275 (stating that dismissal of a *pro se*

plaintiff's claim is only appropriate "where it is obvious that [he] cannot prevail on the facts

he has alleged and it would be futile to give him an opportunity to amend"); *Civil Case*

*Practice Standards for Judge Philip A. Brimmer* at 8 § (III)(F)(2)(a) ("Rule 12(b) motions are

discouraged if the defect is correctable by the filing of an amended pleading."). Moreover,

Plaintiff has clearly pled "extreme pain," which has been expressly recognized by the Court

of Appeals for the Tenth Circuit as "substantial harm." *Garrett*, 254 F.3d at 950.

Defendants next contend that Plaintiff has not adequately alleged that Dowis knew

of and consciously disregarded an excessive risk to his health or safety when she

purportedly ordered a delay in medical treatment on January 6, 2011. *See Motion* [#70]

at 5. Defendants argue that Plaintiff's Amended Complaint alleges at most that Dowis's

order to delay Plaintiff's treatment was inadvertent, negligent, or a good faith error. *See*

*id.* at 6. Thus, Defendants argue that Plaintiff has failed to plead "obduracy or

wantonness," *Whitley*, 475 U.S. at 319, by Dowis. Again the Court disagrees. "Whether

a prison official had the requisite knowledge of a substantial risk is a question of fact

subject to demonstration in the usual way, including inference from circumstantial

evidence." *Garrett*, 254 F.3d at 950. Accordingly, it is inappropriate for the Court to

dismiss the claim against Dowis before Plaintiff has had the benefit of discovery. *See*

*Response* [#76] at 5 (asserting that "notes" from the January 6, 2011 "medical staffing"

meeting at which Dowis allegedly ordered a delay in the provision of medical treatment are

part of a record that will be "available at [the] time of discovery"). Plaintiff has alleged that

he had already been diagnosed with a serious medical condition, a "partial rupture [of the]

Achilles tendon," at the time he arrived at Sterling. *Amended Complaint* [#66] at 6. He has

also alleged, albeit perfunctorily, that Dowis's purported decision to delay his treatment on

-16-

January 6, 2011 was "willful and wanton." *Id.* at 7.  The Court finds that these allegations are sufficient to plausibly give rise to an inference that Dowis knew of and consciously disregarded an excessive risk to Plaintiff's health and safety.  Accordingly, the Court recommends that Plaintiff's delay in treatment claim against Dowis should not be dismissed at this juncture.

### (2)   Defendants Melloh and Stock

Plaintiff alleges that Defendants Melloh and Stock are physician's assistants at Sterling. *Id.* at 1.  He claims that Melloh violated the Eighth Amendment on March 31, 2010 by (1) conducting only "a cursory medical exam," and (2) deviating from "prior treating physicians' orders" and denying "adequate and proper treatment to alleviate extreme pain." *Id.* at 8.  He claims that Stock violated the Eighth Amendment by (1) failing "to conduct even a cursory medical exam" and deviating from "prior treating physicians' orders" on June 1, 2010, and (2) canceling his "prescription for ibuprofen" on June 6, 2010.  *Id.* at 8-9.

The Court agrees with Defendants that "Plaintiff's allegations show only a disagreement with the treatment provided by [Melloh and Stock]." *Motion* [#70] at 8.  "[A] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." *Ramos,* 639 F.2d at 575; *Callahan*, 471 F.3d at 1160 (explaining that a prisoner does not have a valid claim of deliberate indifference simply because he was denied "a particular course of treatment" that he desired).  Although Plaintiff alleges that Melloh and Stock deviated from physicians' orders, he does not explain what those orders were, who gave them, or how they were not followed.  "A complaint must include

-17-

'factual content that allows the Court to draw the reasonable inference'" that a defendant engaged in unlawful conduct.  *Arocho*, 367 F. App'x at 954 (quoting *Iqbal*, 129 S. Ct. at 1949).  Here, the unlawfulness of Melloh and Stock's alleged deviation from orders "is nothing more than a theoretical possibility in the absence of other, unnamed acts about which the Court can only speculate." *Id.*  Accordingly, the Court recommends that Plaintiff's claims against Melloh and Stock should be dismissed with prejudice.  *See supra* n.3.

### (3)    Defendants Krebs and Frantz

Plaintiff alleges that Defendants Krebs and Frantz denied him "access to formal physical therapy" for his Achilles tendon injury on April 17, 2010.  *Amended Complaint* [#66] at 10.  He also alleges that Krebs and Frantz delayed in providing him with an "orthosis" that was recommended by the "medical staff" at Sterling.[4]  *Id.* at 11-12.  Again the Court finds that Plaintiff's allegations are too factually thin to sustain an Eighth Amendment claim. Plaintiff does not explain the nature of the recommendation for an orthosis, who gave it, or why its execution was delayed and for how long.  While the Court of Appeals for the Tenth Circuit has indicated that a failure to adequately pursue medical treatment that has been ordered or recommended by prison doctors might be a basis for liability, it has also stated that "plausible factual specification" is required.  *Arocho*, 367 F. App'x at 954.  Accordingly, the Court recommends that Plaintiff's claims against Krebs and Frantz should be dismissed with prejudice.  *See supra* n.3.

---

[4] The Court notes that the word "orthosis" is interchangeable with the more commonly used word "orthotic."  The Oxford English Dictionary defines an orthosis as "an external orthopaedic appliance or apparatus, such as a brace or splint, that serves to support, assist the function of, or prevent movement in a body part such as a limb or the spine."  Oxford English Dictionary Online (3d ed. Sept. 2004), http://www.oed.com/viewdictionaryentry/Entry/132867.

### (4)     Defendant Fortunato

Plaintiff alleges that Defendant Fortunato "work[ed] in concert with" Dowis and others to order the delay of provision of medical treatment at the "medical staffing" on January 6, 2011. *Amended Complaint* [#66] at 12.  For the reasons set forth above in part III(C)(1)(b) of this Recommendation, the Court recommends that Plaintiff's claim against Fortunato should not be dismissed at this juncture.

### (5)     Defendant Wilson

Plaintiff alleges that Defendant Wilson is the "Medical Records Administrator" at Sterling.  *Id.* at 1.  He claims that Wilson "destroyed, misplaced, and/or failed to retrieve [his] medical records" on April 20 and October 5, 2010 and January 10, 2011.  *Id.* at 13. He further claims that Wilson's conduct resulted in a delay of his receipt of "adequate and proper medical care and treatment."  *Id.*

The Court finds that Plaintiff has failed to state an Eighth Amendment claim against Wilson because he has failed to plead "obduracy or wantonness" on her part or any facts which plausibly give rise to an inference of obduracy or wantonness. *Whitley*, 475 U.S. at 319.  Plaintiff has alleged that Wilson may have "misplaced" his records.  While this allegation suggests inadvertence, incompetence, or negligence, it does not implicate the Eighth Amendment.  Plaintiff does not allege that Wilson knew of and disregarded an excessive risk to his health and safety.  Further, Wilson's position as a records administrator suggests that she was not responsible for knowing Plaintiff's medical condition or for making any decisions regarding his treatment.  Moreover, Plaintiff "has not identified specific documents" that Wilson destroyed or misplaced, and he "offers only unsupported accusations that [Wilson] destroyed or [misplaced] documents." *Cameron v.*

*Rantz*, No. CV 08-42-H-DWM, 2010 WL 2541072, at *2 (D. Mont. June 16, 2010)

(unreported decision); *see also Liner v. Goord*, 115 F. Supp. 2d 432, 435 (S.D.N.Y. 2000)

(dismissing a constitutional claim based on alleged tampering with and destruction of an

inmate's medical records because the inmate failed to state which records were tampered

with or destroyed).    The Court therefore concludes that Plaintiff's allegations are

insufficient.   Accordingly, the Court recommends that Plaintiff's claim against Wilson be

dismissed with prejudice.   *See supra* n.3.

### IV.  Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that the Motion [#70]

be **GRANTED in part** and **DENIED in part**, as set forth below.

IT IS FURTHER **RECOMMENDED** that Plaintiff's claims against Defendants in their

official capacities be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(1).

IT IS FURTHER **RECOMMENDED** that Plaintiff's delay in treatment claims against

Defendants Dowis and Fortunato in their individual capacities not be dismissed at this

juncture.

IT IS FURTHER **RECOMMENDED** that all of Plaintiff's other claims be dismissed

with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have

fourteen (14) days after service of this Recommendation to serve and file any written

objections in order to obtain reconsideration by the District Judge to whom this case is

assigned.   A party's failure to serve and file specific, written objections waives de novo

review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*,

474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal

questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

       Dated:  June 6, 2011

                                     BY THE COURT:

                                      s/ Kristen L.  Mix
                                     Kristen L.  Mix
                                     United States Magistrate Judge